UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:25-cr-00279-JAM |
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO DISMISS COUNT ONE AS TIME-BARRED** |
| MOHAMED AZAB YOUSSEF, | |
| Defendant. | |

Defendant Mohamed Azab Youssef is the co-founder of Paxful, Inc. ("Paxful"), a peer-to-peer virtual currency marketplace where users could negotiate for and trade in crypto-currency. On December 4, 2025, Defendant was indicted on four counts, including conspiracy to willfully fail to maintain an effective anti-money laundering ("AML") program under 18 U.S.C. § 371 ("Count One"). Defendant now moves to dismiss Count One as untimely, arguing that the last overt act for that count occurred in October 2019, well outside of the five-year statute of limitations.

As discussed further below, the Court finds that Count One is timely under several tolling orders issued by this Court

1

pursuant to 18 U.S.C. § 3292.  Thus, the Court denies Defendant's Motion to Dismiss Count One as Time-Barred.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from Defendant's former role at Paxful, a peer-to-peer virtual currency marketplace he co-founded with Artur Shaback in July 2015.  Indictment ¶¶ 1, 3, ECF No. 1. Along with Shaback, Defendant owned and served as a board member for Paxful and its related entities, including two Delaware corporations, an Estonian entity, and a Philippines-based entity. Id. ¶¶ 1-2, n.1.

On December 4, 2025, a grand jury returned an indictment charging Defendant with (1) conspiracy to willfully fail to maintain an effective AML program under 18 U.S.C. § 371; (2) conspiracy to operate an unlicensed money transmitting business under 18 U.S.C. § 371; (3) operating an unlicensed money transmitting business under 18 U.S.C. §§1960(a) & (b)(1)(C) and 2; and (4) conspiracy to violate the interstate and foreign travel or transportation in aid of racketeering enterprises act under 18 U.S.C. § 371.  Id. ¶¶ 27-71.

In Count One, the grand jury alleged that, starting in July 2015 and continuing until at least November 2019, Defendant conspired with others to willfully cause Paxful to fail to establish an effective AML program.  Id. ¶¶ 27-41. Specifically, Defendant, Schaback, and others allowed customers to open accounts and trade without verifying their identities; failed to develop an AML program; failed to monitor customer transactions for money laundering, sanctions violations, illegal prostitution, or other criminal activity; failed to designate a compliance

2

officer until November 2018; failed to provide any AML/know-your-customer training until June 2019; failed to file a single Suspicious Activity Report until November 2019; and failed to provide for independent auditing for AML until September 2020. Id. ¶¶ 29-34.  In furtherance of that conspiracy, Defendant and others committed several overt acts, including providing a fake AML policy to a separate virtual currency exchange, falsely claiming to have AML policies and procedures, and directing employees to skip know-your-customer checks on small amount buyers.  Id. ¶¶ 35-39.  The final overt act alleged in Count One occurred on or about October 18, 2019, when Defendant and others allowed undercover law enforcement in the Eastern District of California to use a Paxful account named "Therealpureheroin" to be opened and complete a bitcoin sale on the platform.  Id. ¶ 41. By deliberately failing to implement an AML program sufficient to guard against money laundering, the Indictment alleges Defendant and his co-conspirators facilitated the movement of criminal proceeds through Paxful, including websites known to be engaged in advertising illegal prostitution and commercial sex services and websites transferring funds linked to fraud.  See id. ¶¶ 42-59.

While investigating Defendant, Schaback, and Paxful before the Indictment, the Government submitted, through the Department of Justice Office of International Affairs ("OIA"), several official requests for legal assistance in obtaining evidence from foreign nations ("MLATs") to Estonia and the Philippines.

///

///

A.   Estonia MLATs and Tolling Orders

In September 2015, Paxful moved its operations from the United States to Estonia, where Schaback is a citizen.  Opp'n at 4, ECF No. 44.  In approximately January 2020, United States law enforcement learned that Estonian law enforcement was investigating Schaback and others.  Id.  This led to four official requests from OIA to Estonian authorities between October 9, 2020, and August 31, 2023: (1) on October 9, 2020 ("First Request"); (2) on January 13, 2023 ("First Supplemental Request"); (3) on March 2, 2023 ("Second Supplemental Request"); and (4) on August 31, 2023 ("Third Supplemental Request").  Id. at 4-5.

On February 17, 2023, pursuant to an application by the Government under 18 U.S.C. § 3292, United States District Court Judge Troy L. Nunley issued an order suspending the running of the statute of limitations for the grand jury's investigation into Defendant and others for willfully failing to establish, maintain, and enforce an AML program, among other offenses, for the following periods: (1) from October 9, 2020, to December 22, 2020 (for the First Request); and (2) from January 13, 2023, to the date on which Estonia took final action with regard to the January 13, 2023, First Supplemental Request.  Id.; see also Ex. D, ECF No. 44-4.  On May 2, 2023, Estonia took final action on the First Supplemental Request.  Opp'n at 5.

On October 17, 2023, pursuant to another application by the Government under 18 U.S.C. § 3292, Judge Nunley issued an order suspending the running of the statute of limitations for the grand jury's investigation into Defendant and others for

willfully failing to establish, maintain, and enforce an AML program, among other offenses, for the following periods: (1) March 2, 2023, to the date on which Estonia took final action with regard to the March 2, 2023, Second Supplemental Request; and (2) August 31, 2023, until the date on which Estonia took final action with regard to the August 31, 2023, Third Supplemental Request.  Id.; see also Ex. I, ECF No. 44-9.  On September 11, 2023, Estonia took final action on the Estonia Second Supplemental Request, and on November 1, 2023, Estonia took final action on the Third Supplemental Request.  Opp'n at 5–6.

B.    Philippines MLAT and Tolling Order

During the investigation, the United States learned that Paxful held 99.8 % voting power in a Philippines-based entity called Advanced Support Services, Inc.  Id. at 6.  Law enforcement traced funds from Paxful's United States-based accounts to accounts held by Advanced Support Services, Inc. and bitcoin flowing from wallets believed to be controlled by Paxful, Defendant, and Schaback related to the Philippines business.  Id.  Law enforcement also identified two bank accounts held by Paxful and one account held by Advanced Support Services, Inc. at the Union Bank of the Philippines.  Id.

This led to an official request on May 30, 2023, to the Philippines for financial records for the three identified accounts at Union Bank, any additional accounts held in the names of Advanced Support Services, Paxful, or the Paxful owners, and incorporation records for Advanced Support Services (the "Philippines MLAT Request").  Id.  The Philippines issued several

initial responses to the request.  Id.

On January 10, 2025, pursuant to an application by the United States under 18 U.S.C. § 3292, United States District Court Judge Dena Coggins issued an order suspending the running of the statute of limitations for the grand jury's investigation into Defendant and others for willfully failing to establish, maintain, and enforce an AML program, among other offenses, for May 30, 2023, to the date on which the Philippines took final action with regard to the Philippines MLAT Request.  Id. at 6-7.

On July 15, 2025, the Philippines issued an additional response to the Philippines MLAT Request.  Id. at 7.  On January 15, 2026, OIA informed the Philippines that certain bank records remained outstanding.  Id.  That follow-up request remains pending.  Id.

C.   Defendant's Tolling Agreements and Additional Procedural History

On February 14, 2025, and March 31, 2025, the Defendant signed agreements to toll the statute of limitations between January 22, 2025, and April 23, 2025.  Ex. Q, ECF No. 44-17; Ex. R, ECF No. 44-18.  On December 4, 2025, a grand jury returned the indictment against Defendant.  ECF No. 1.  On February 27, 2026, the Defendant was arraigned and had his initial appearance in the Eastern District of California.  ECF No. 22.

Defendant filed the pending Motion to Dismiss Count One as Time-Barred on June 5, 2026.  Mot., ECF No. 42.  The Government filed an Opposition, Defendant filed a Reply, and the Government filed a Sur-Reply to address additional arguments raised by Defendant's Reply.  Opp'n, ECF No. 44; Reply, ECF No. 46; Sur-

Reply, ECF No. 50.  The Court held a hearing on July 14, 2026, and the matter was submitted.  ECF No. 52.

**II.   LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 12(b), a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  "Generally, Rule 12(b) motions are appropriate to consider 'such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction.'"  United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (citation omitted).  The Court is bound by the "four corners" of the indictment, and "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."  United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).  On a motion to dismiss an indictment as barred by the statute of limitations, the government bears the burden of showing by a preponderance of the evidence that the charges are timely.  Grunewald v. United States, 353 U.S. 391, 396 (1957); United States v. Gonsalves, 675 F.2d 1050, 1054 (9th Cir. 1982) (holding that the "preponderance of the evidence" standard applied where the government sought to prove that a statute of limitations had been validly tolled).

**III. OPINION**

Defendant argues that Count One, which charges Defendant with conspiring to willfully cause Paxful to fail to maintain an effective AML program required by the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311 et seq., in violation of 18 U.S.C. § 371, is time-barred.  Mot. at 1.  Defendant argues that the applicable

7

statute of limitations is five years under 18 U.S.C. § 3282(a), and that the limitations period runs from the last overt act committed in furtherance of the charged conspiracy. Id. at 1, 6-7. Here, the conspiracy is alleged to have ended in 2019, and the Indictment was filed on December 4, 2025. Id. at 1, 7. The last overt act alleged in Count One occurred on October 18, 2019; thus, there is no overt act within the applicable five-year statute of limitations period (i.e., on or after December 4, 2020). Id. at 1, 5, 7-8. Accordingly, Defendant argues that Count One is untimely and moves to dismiss that count from the Indictment. Id. at 1, 9.

In opposition, the Government concedes that the limitations period began running on the date of the last alleged overt act in the Indictment, October 18, 2019. Opp'n at 8. However, the Government argues that the Court should deny Defendant's motion because the grand jury returned the Indictment while the statute of limitations was tolled under orders properly issued by Judges Nunley and Coggins under 18 U.S.C. § 3292(a)(1). Id. at 8-9.

The Court finds that Count One is timely. The Parties agree that the statute of limitations on Count One began running on October 18, 2019, the date of the last overt act charged in the Indictment. See Indictment ¶ 41. The Parties also agree that the applicable statute of limitations is five years. Thus, absent tolling, the statute of limitations on Count One expired on October 18, 2024. The Indictment was not filed until December 4, 2025, leaving a shortfall of approximately 412 days.

However, the statute of limitations was tolled several times before the Indictment was filed. The limitations period first

8

ran from October 18, 2019, to October 9, 2020, for 358 days.  It was then suspended from October 9, 2020, to December 22, 2020, by Judge Nunley's February 17, 2023, Order while the First Request to Estonia was pending.  The limitations period then restarted and ran from December 22, 2020, until January 13, 2023, for 753 days.  Pursuant to Judge Nunley's February 17, 2023, Order, the limitations period was suspended from January 13, 2023, until May 2, 2023, when Estonia took final action on the First Supplemental Request.  In addition, pursuant to Judge Nunley's October 17, 2023, Order, the limitations period was suspended from March 2, 2023, until September 11, 2023, when Estonia took final action on the Second Supplemental Request, and again from August 31, 2023, until November 1, 2023, when Estonia took final action on the Third Supplemental Request.

Further, pursuant to Judge Coggin's January 10, 2025, Order, the limitations period was suspended from May 30, 2023, until the Philippines took final action on that MLAT Request.  The Philippines MLAT Request is still pending.  However, the Government concedes that the suspension of the limitations period ended on October 29, 2025, pursuant to 18 U.S.C. § 3292(c)(1)'s instruction that the "total of all periods of suspension under this section with respect to an offense . . . shall not exceed three years."  Opp'n at 9.

In sum, the limitations period for Count One is five years or 1,825 days.  The statute of limitations previously ran for 358 days (from October 18, 2019, to October 9, 2020) and for 753 days (from December 22, 2020, to January 13, 2023).  The limitations period began running again on October 29, 2025, and will continue

running for 714 days until it reaches the limitations period of five years on October 13, 2027.  Thus, under the tolling orders, Count One is timely.

Defendant argues that Judge Coggin's tolling order related to the Philippines MLAT Request is inapplicable to Count One and makes that count untimely for three reasons.  First, the Philippines MLAT Request cannot provide a basis to toll the statute of limitations under 18 U.S.C. § 3292 for Count One because the request did not seek evidence material to that count, as it "did not ask for AML policies, AML-program documents, compliance manuals, know-your-customer ('KYC') materials or controls, AML training records, audits, compliance communications, or testimony or interviews from any person involved in Paxful's AML program or compliance department," and only "asked for bank records and incorporation records."  Reply at 13–21.  Second, the Government's application for a tolling order based on the Philippines MLAT Request was defective, as it lacked the necessary evidentiary support (i.e., a copy of the MLAT request and a sufficient declaration from the Assistant United States Attorney ("AUSA") who submitted that request, AUSA Matthew Thuesen), and raises serious concerns that the Government was using the request not to obtain evidence from a foreign government, but rather to "solve a limitations problem it knew it had."  Id. at 21–30.  Third, the time tolled under the Estonia MLAT requests should be limited to six months (i.e., approximately 183 days), for a total of approximately 270 days tolled for Count One (with the addition of the two tolling agreements signed by Defendant), under 18 U.S.C. § 3292(c)(2)

because the Philippines MLAT Request is irrelevant to Count One and the Estonia MLAT requests reached final action before the original limitations period expired.  Id. at 3.

The Court finds all three arguments fail.  In relevant part, Section 3292 provides:

> (a) (1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country . . .
>
> (c) The total of all periods of suspension under this section with respect to an offense—
>
> (1) shall not exceed three years; and
>
> (2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

18 U.S.C. §§ 3292(a)(1), (c)(1)-(2).

*First*, as noted above, Defendant argues that the Philippines MLAT Request did not toll the statute of limitations as to Count One under 18 U.S.C. § 3292 because the request did not seek evidence material to Count One.  However, this argument reads a requirement into the statute that does not exist.  The Ninth Circuit has examined the language of 18 U.S.C. § 3292(a)(1), and has stated that to seek tolling for an offense, the Government is "required to prove to the court that the evidence [of an offense]

11

actually is or was in the foreign country, has been officially requested, and is related to an offense." United States v. DeGeorge, 380 F.3d 1203, 1215 (9th Cir. 2004). The statute does not require that the government show that evidence sought is "material or otherwise essential to the charges." Id. at 1213; see also DeGeorge v. U.S. Dist. Ct. for Cent. Dist. of Cal., 219 F.3d 930, 938 (9th Cir. 2000) ("The statute clearly states that the government need only establish that 'evidence of an offense,' not evidence essential to bringing charges on an offense, is 'in [a] foreign country.'"). Such a "proposed interpretation of the statute would require district courts to make a determination of the value of the foreign evidence the government seeks - to second-guess the government's investigation - which the statute simply does not contemplate." DeGeorge, 219 F.3d at 938-39. Plainly stated, there is no requirement that evidence sought be material or essential rather than merely relevant to an offense under the statutory language.

Here, the Indictment alleges that Defendant failed to implement an AML program at Paxful which, in turn, facilitated the movement of criminal proceeds through Paxful. Indictment ¶¶ 27-55. The Philippines MLAT Request clearly sought records related to Defendant and Paxful's alleged money laundering activity, as United States law enforcement had traced funds from Paxful's United States-based accounts to a Philippines-based entity, Advanced Support Services, Inc., controlled by Paxful, and had located bank accounts for both entities in the Philippines. Specifically, the MLAT requested bank records and official records related to Defendant, Shaback, and Paxful, as

well as any subsidiaries, in connection with the charges in the Indictment, including Defendant's conspiracy to willfully cause a financial institution to fail to maintain an effective AML program in violation of the BSA (i.e., Count One).  See Ex. M, ECF No. 44-13.  As the Government persuasively argues, the Government's "request for bank and incorporation records was relevant to its investigation of money laundering and, relatedly, Paxful's failure to maintain an [AML] program and operating an unlicensed money transmitting business.  Indeed, the investigation of these charges go hand-in-hand."  Sur-Reply at 4.

AUSA Thuesen's application for an order tolling the statute of limitations presented a reasonable basis for tolling Count One based on the Philippines MLAT Request, as he specifically listed the willful failure to establish an AML program (among other offenses) in the tolling application, attested that it reasonably appeared that evidence of that offense was to be found in the Philippines, and affirmed that the United States had requested such evidence from the Philippines.  See Ex. L, ECF No. 44-12.  Based on these representations, Judge Coggins found that it "reasonably appear[ed], based on a preponderance of the evidence presented to this Court, that evidence of the offenses under investigation is located in the Philippines."  Ex. O, ECF No. 44-15.  This is sufficient under 18 U.S.C. § 3292(a)(1).

Neither United States v. Trainor, 376 F.3d 1325 (11th Cir. 2004) nor United States v. Jenkins, 633 F.3d 788 (9th Cir. 2011), cited by the Defendant, provide support for the idea that the United States must demonstrate that the evidence sought in the Philippines MLAT Request was essential to a specific charged

offense.  Those cases stand for the basic proposition that the Government must provide a reliable basis for the court to conclude that evidence of an offense reasonably appears to exist in a foreign country and that a request has been made for that evidence.  The Government did so here.

Similarly United States v. Gyetvay, 149 F.4th 1213 (11th Cir. 2025), also cited by Defendant, is not helpful here.  There, the Eleventh Circuit concluded that the Government must specifically identify which offenses it seeks to be tolled in its tolling application.  Id. at 1228.  Gyetvay did not require that the evidence sought in the foreign request be material to a specific charge in the indictment to toll the statute of limitations for that charge.

For these reasons, the Court finds that the Government satisfied the preponderance of the evidence standard to toll the statute of limitations for Count One based on the Philippines MLAT Request under 18 U.S.C. § 3292(a)(1).

*Second*, Defendant argues the Government's application for the tolling order based on the Philippines MLAT Request was defective and incomplete, as the Government attached only "the May 30, 2023, letter transmitting the MLAT request," not the official request itself, and the prosecutor supporting the application did not verify the contents of the official request.  Reply at 21–24.  However, in the Ninth Circuit, there is no specific required evidentiary showing to obtain a tolling order under 18 U.S.C. § 3292; rather, "when the government moves to suspend the statute of limitations under § 3292, it must present something with evidentiary value tending to prove it is

14

reasonably likely that evidence of the charged offenses is in a foreign country." Jenkins, 633 F.3d at 798 (internal quotations and alterations omitted). Here, AUSA Thuesen provided a sworn declaration, based on his personal knowledge and conversations with agents from Homeland Security Investigations and financial analysts, explaining why the United States believed evidence (bank records and incorporation records) of the offenses under investigation reasonably appeared to be located in the Philippines and that an official request had been made for that evidence. See Ex. L. He provided specific details about why it reasonably appeared that the evidence was located there, including that the Defendant and his co-conspirators transferred money to a wholly owned entity in the Philippines and that Paxful itself maintained a bank account in the Philippines. Id. He also included the cover letter from OIA to the Philippines, which summarized the MLAT request. Id. The Court finds that this evidence was sufficient for Judge Coggins to conclude, by a preponderance, that Section 3292's requirements were met and that the statute should be tolled.

Defendant also suggests that the timing of the tolling request raises serious concerns of pretext, i.e., that the request was "an attempt to solve a limitations problem after the fact rather than obtain foreign evidence to charge Count One." Reply at 4. However, Defendant has failed to provide sufficient evidence that the Government's application for a tolling order was based on pretext. As the Government notes, the Philippines has been slow to respond to their MLAT request and numerous follow-ups from the OIA, which is why the Government sought a

tolling order in January 2025.  Sur-Reply at 7-8.  The Court credits this explanation and find that the Government sought the tolling order in good faith.

*Finally*, because Judge Coggin's tolling order based on the Philippines MLAT Request is valid and applicable to Count One, the Court finds the timing provision of 18 U.S.C. § 3292(c)(1), not (c)(2), applies, such that the tolling orders based on the Estonia MLAT requests are not limited to six months.  Rather, the total tolling permitted as to Count One under the applicable tolling orders may not exceed three years.  With that three-year cap, the limitations period began running again on October 29, 2025, and will continue to run for 714 days until it reaches the limitations period of five years on October 13, 2027.

Thus, the Court finds Count One is timely, and declines to dismiss Count One from the Indictment.

### IV.    ORDER

For the reasons above, the Court DENIES Defendant's Motion to Dismiss Count One as Time-Barred (ECF No. 42).

IT IS SO ORDERED.

Dated: August 10, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

16